AO 472 (Rev. 11/16) Order of Detention Pending Trial

United States District Court
Southern District of Texas

**ENTERED**
June 08, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. 4:20-mj-1494 |
| Emmanuel Aig ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

  ☒  Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
  ☒  Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
   ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
   ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
   ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
   ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
   ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
     **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
  ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

_X_ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

_X_ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

_X_ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

_X_ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

## Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

_X_ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

_X_ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

- [X] Weight of evidence against the defendant is strong
- [X] Subject to lengthy period of incarceration if convicted
- [ ] Prior criminal history
- [ ] Participation in criminal activity while on probation, parole, or supervision
- [ ] History of violence or use of weapons
- [ ] History of alcohol or substance abuse
- [ ] Lack of stable employment
- [ ] Lack of stable residence
- [ ] Lack of financially responsible sureties
- [ ] Lack of significant community or family ties to this district
- [ ] Significant family or other ties outside the United States
- [ ] Lack of legal status in the United States
- [ ] Subject to removal or deportation after serving any period of incarceration

☐ Prior failure to appear in court as ordered
X̲ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
☐ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

The Court finds that Defendant has introduced sufficient evidence to rebut the presumption of detention. However, for the reasons described below, the Court finds by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. The Court also finds by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required.

The Court held a detention hearing on June 3, 2021. The Court admitted into evidence two Government Exhibits and a Pretrial Report prepared by the United States Probation Office. The Court also heard live testimony from Detective/FBI Task Force Officer Jessica Bruzas. After taking the detention issue under advisement, the Court had unresolved questions about the delay in arresting Defendant and the Government's position that Defendant changed his physical appearance immediately after the alleged crimes. The Court, therefore, held a second detention hearing on June 7, 2021. Detective Bruzas testified again. Patricia Godie, a licensed barber and hair stylist, testified as a witness for Defendant.

Defendant is charged with robbing a Brinks Armored Car in Houston, Texas in violation of 18 U.S.C. § 1951(a) (interference with commerce by robbery). Defendant is also charged with discharging a firearm during the robbery in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (discharge of a firearm during and in relation to a crime of violence). At the hearings, the Government presented evidence of the following events:

On August 17, 2020, at approximately 11:52 AM, an employee of Brinks Armored Car exited Family Dollar with two cash deposit bags totaling $5,441.77. Two African-American males then exited a Silver Dodge Journey with Texas plate NKM1311 and robbed the Brinks employee at gunpoint. One of the suspects, who was later identified by law enforcement as Defendant, exchanged gunfire with the Brinks employee, who was shot in the leg and taken to the hospital. The suspects fled the scene.

About 30 minutes after the robbery, at 12:24 PM, Defendant's fiancée reported that her vehicle—a Silver Dodge Journey with Texas plate NKM1311—had been carjacked at gunpoint while in Defendant's possession. Defendant's fiancée told police that Defendant would meet them at the scene of the carjacking and would be wearing a blue shirt. However, when officers arrived at the scene, Defendant was not there and the police left. Defendant called the police himself to report the car missing and met with officers about two hours later. Defendant stated the car had not been taken at gunpoint, but rather had been stolen when he left it running and unattended. According to the officers, Defendant was wearing a white shirt and appeared to have recently cut his hair short, as they observed bumpy sections on the back of his head.

Detectives spoke to two witnesses of the armored car robbery. The first witness ("Witness 1") heard gunshots and then saw a man—who she described as a slender African-American male that had black dreadlocks with blond tips and was wearing a blue shirt—chasing after the Brinks employee with a gun in his hand. Another witness ("Witness 2") saw a man with dreadlocks wrestling with the Brinks employee and fleeing in a silver van. Detectives met with both witnesses to conduct a photo array. Witness 1 tentatively identified Defendant and Witness 2 positively identified Defendant as the man involved in the armored car robbery. Detectives also compared a driver's license photo of Defendant with surveillance video of the robbery and noted he resembled one of the suspects. Particularly, Defendant's driver's license photo from February 2020 showed he had short dreadlocks with blond tips.

The Court issued an arrest warrant on August 18, 2020. On August 31, 2020, law enforcement went to several of Defendant's known addresses and spoke to his relatives, but could not locate Defendant. According to Detective Bruzas, law enforcement consistently attempted to find Defendant over the next 9 months, especially after learning he had received a new driver's license in the Houston area in March 2021. Defendant was arrested in late May 2021 after being involved in a car accident.

Defendant argues that he is not a flight risk or a danger to the community. Defendant points out that he worked at the same job from April to December 2020 in Houston and that law enforcement could easily have located him through his employment and associated tax records. Defendant also points out that he was stopped by police on October 23, 2020 for changing lanes in an intersection, but he was not arrested at that time. Finally, Defendant argues that the Probation Office recommends release with a GPS monitor and that supervision by the Probation Office would prevent any potential issues with his release. Given that Defendant did not flee or commit any other known crimes during the 9 months before his arrest, the Court finds that Defendant has presented evidence to rebut the presumption of detention. However, after considering the presumption and the other factors discussed *infra*, detention is warranted.

First, the weight of the evidence that Defendant committed a violent robbery—during which he shot the victim in the leg—is strong. Detectives compared Defendant's driver's license photo with the suspect in the surveillance video and determined they were the same. Two witnesses identified Defendant in a photo array, albeit one of the identifications was tentative. Defendant's fiancée notified law enforcement that Defendant had been in possession of her Silver Dodge Journey, the suspected vehicle, at the time of the armored car robbery. Although Defendant did not have dreadlocks when he met with police two hours after the armored car robbery, detectives observed uneven hair on the back of his head indicating it had been recently cut.[1] Defendant also had dreadlocks with blond tips in his driver's license photo.

Second, Defendant faces a significant prison sentence if convicted. His base offense level for the robbery would be a Level 20 (33-41 months), but he would also be subject to two enhancements: seven levels under § 2B3.1(b)(2) because Defendant allegedly discharged a firearm and at least two levels under § 2B3.1(b)(3) because Defendant allegedly caused bodily injury.[2] If these enhancements are applied, Defendant's offense level would be a Level 29 (87-108 months). These calculations do not include the potential of an additional mandatory ten-year sentence if convicted under 18 U.S.C. § 924(c)(1)(A)(iii). Defendant is now aware, after his arrest, of the seriousness of the charges and the severity of the punishment he faces.

Third, it appears Defendant falsely reported a carjacking and attempted to deceive police as to his identity. While Defendant's witness testified that it would have been impossible for Defendant to convert his dreadlocks to a short haircut in less than two hours—the time between the armored car robbery and Defendant's meeting with police—the witness did not have specific information about the suspect's hair during the crime, as this information has not yet become available. The witness also did not address whether or not a person could informally cut off his dreadlocks without going to a barbershop and, if so, whether he could do so in less than two hours. While the witness's testimony may certainly be useful to Defendant at later stages in the proceedings, it does not sufficiently undermine the evidence at this stage that Defendant committed the armored car robbery and subsequently attempted to deceive the police.

Therefore, the Court finds that there is no condition or combination of conditions of release that will reasonably assure the appearance of Defendant or the safety of the community.

---

[1] Defendant's witness, Patricia Godie, testified that it would have been impossible for Defendant to cut off his dreadlocks in the two hours between the robbery and his meeting with police about the carjacking. This testimony is addressed below.

[2] This enhancement could be up to six levels depending on the severity of the bodily injury.

**Part IV - Directions Regarding Detention**

The Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:     June 8, 2021

Sam S. Sheldon
United States Magistrate Judge